CHEHARDY, Judge.
Hilliard C. Fazande II appeals a judgment in favor of his half-brother, Lorenzo A. Scott II, annulling a 1978 judgment under which Fazande had been declared owner of certain real estate formerly a part of their mother’s succession. On appeal Fa-zande asserts the trial judge erred in failing to find that the annulment action had prescribed; alternatively, that the trial court erred in finding Scott was a “defendant who has not been served with process as required by law” within the meaning of LSA-C.C.P. art. 2002.
Hilliard Fazande II is the elder son of decedent Alther Scott, the offspring of her marriage to Hilliard Fazande Sr. Lorenzo Scott II, her younger son, was born during her marriage to Lorenzo Scott Sr. Fa-zande II and Scott II are" her only forced heirs. Mrs. Scott died on September 15, 1975, apparently intestate, and her husband Lorenzo Scott Sr. was appointed administrator of her succession.
Subsequently an olographic testament by Mrs. Scott was discovered in which her son Hilliard Fazande II was named executor. Fazande, an attorney at law, had the court remove his stepfather as administrator and was himself duly appointed executor. Among the assets of the succession was an undivided interest in a house and lot located at 1411 Franklin Avenue in Gretna, Louisiana. The other co-owners of the property were Lorenzo Scott Sr., decedent’s husband, and Emma Tasker Loveless, who is *1024 decedent’s mother and the grandmother of the two litigants before us.
On February 9, 1978, Fazande filed a document styled “Petition to Establish Ownership in Succession Property and to Invalidate Sale,” which alleges that Hilliard Fazande II’s mother, stepfather and grandmother had conspired fraudulently to deprive him of ownership of the property at 1411 Franklin Avenue. Specifically, the petition alleged that 1411 Franklin Avenue had been the separate property of Hilliard Fazande Sr.; that Fazande II had inherited that property in full ownership from his father and was placed in possession of it on November 21, 1961; that, at that time, Fazande was a college student in Nebraska; that Fazande had granted one Henry Huckabee power of attorney for the exclusive purpose of placing Fazande in possession of his father’s succession; that on December 6, 1961 the power of attorney was used to confect an act of sale transferring the Franklin Avenue property from Fazande to Alther Scott, Lorenzo Scott Sr. and Emma Loveless, without Fazande’s knowledge; that he never received any of the monies recited as consideration in the act of sale; that he had learned of the nature of the transaction only recently.
On its face, the petition lists Lorenzo Scott II, Lorenzo Scott Sr. and Emma Task-er Loveless as joint petitioners with Hilli-ard Fazande. Attached to the petition are verifications purportedly signed by Fa-zande, Scott Sr. and Loveless. Although the petition recites that Scott II joins in the petition it contains no verification by him.
On the same date the above petition was filed, the district judge signed an ex parte judgment entitled “Judgment of Possession in Regards to Ownership of Succession Property and to Invalidate Sale.” That judgment declared Fazande II to be owner of the property at 1411 Franklin Avenue, charged the Succession of Alther Scott, Lorenzo Scott Sr. and Emma Loveless 16 years of rental for use of the property and gave them credit for improvements made thereon. It is this judgment that is the subject of the nullity action.[1]
On February 10, 1983, Lorenzo Scott II and Emma Loveless filed a petition to annul the judgment of February 9, 1978. They alleged that the judgment had been rendered ex parte; that although Scott II, Scott Sr. and Loveless had been listed as petitioners in Fazande’s “Petition to Establish Ownership of Succession Property and to Invalidate Sales,” upon which the judgment was based, none of those three were aware of the contents of the petition or of its existence; that at the time Fazande’s petition was filed, Lorenzo Scott II was a college student in Texas and knew nothing of the petition; that as a legal heir of Alther Scott, Scott II had seizen of a one-sixth interest in the property at 1411 Franklin Avenue, Gretna; that alienation of succession property under administration may take place only after compliance with the rules set forth in the Code of Civil Procedure; that accordingly the judgment of February 9, 1978 should be annulled for vices of form and of substance.
Fazande filed an exception of prescription on the ground that more than one year had passed since Scott II learned of the existence of the judgment.
At the combined trial of the exception and the merits, counsel stipulated that a letter dated May 6, 1980 to Hilliard Fa-zande II was written by Daniel Ranson, attorney at law, on behalf of his client Lorenzo Scott, II. That letter contained a statement that the ex parte judgment of February 9, 1978 had no effect on Lorenzo Scott II because he had not joined in the petition and had not been served with the petition regarding ownership.
Fazande argued this proved that Scott knew of the alleged fraud or ill practice by May 6, 1980 yet he had not brought his action to annul within the one year limita *1025 tion of LSA-C.C.P. art. 2004. Scott argued that , although an action for annulment on the ground of fraud may have prescribed, the judgment was also void for a vice of form under LSA-C.C.P. art. 2002, in that he had no knowledge of the petition and had not been served. Fazande responded that, as a named petitioner in the 1978 petition, Scott was not required to be served with the petition and that even if the inclusion of Scott as a petitioner was unauthorized, that was a fraudulent practice and therefore a vice of substance.
Scott testified that he was a student at Bishop College in Dallas, Texas from January 1977 until November 1980. He first learned of the February 9, 1978 judgment in the fall of 1980 through his grandmother. He contacted an attorney, Ranson, who filed a motion of some kind. Scott did not know why that motion had never been pursued.
He stated he had never received a copy of the petition upon which the 1978 judgment was based and he had no knowledge of that proceeding or the judgment. Scott said even if he had known Fazande had filed it he would never have agreed to it.
The trial judge concluded that the ground for annulment asserted by Scott fit under both C.C.P. arts. 2002 and 2004, that it was a vice of form as well as a vice of substance. Accordingly, the judge denied the exception of prescription and granted judgment in Scott’s favor, annulling the judgment of February 9, 1978 and ordering inscription of the judgment cancelled from the parish mortgage and conveyance records.
C.C.P. art. 2002 states,
“A final judgment shall be annulled if it is rendered:
“(1) Against an incompetent person not represented as required by law;
“(2) Against a defendant who has not been served with process as required by law and who has not entered a general appearance, or against whom a valid judgment by default has not been taken; or
“(3) By a court which does not have jurisdiction over the subject matter of the suit.
“Except as otherwise provided in Article 2003, an action to annul a judgment on these grounds may be brought at any time.”
C.C.P. art. 2004 states,
“A final judgment obtained by fraud or ill practices may be annulled.
“An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.”
Unquestionably the unauthorized use of Scott IPs name as a plaintiff in the 1978 petition was fraudulent and an ill practice; also unquestionably Scott knew of the practice by May 9, 1980 and should have filed suit by May 9, 1981 to annul the judgment on the ground of fraud or ill practices. If based only on C.C.P. art. 2004, then, his action would be prescribed.
The question remains whether the action to annul can lie under C.C.P. art. 2002 when Scott was not a “defendant” in the 1978 petition but was instead a “plaintiff.” We conclude it can, under the circumstances in this case.
It is well-established that the grounds for annulment enumerated in C.C.P. arts. 2002 or 2004 are exclusive. LeGlue Buick, Inc. v. Smith, 390 So.2d 262 (La.App. 3 Cir.1980). Looking closely at the circumstances listed in art. 2002 as vices of form, we see they all derive from the basis for any legal action: that is, proper jurisdiction by the court over the parties and subject matter of the proceeding.
LSA-C.C.P. art. 6 defines jurisdiction over the person:
“Jurisdiction over the person is the legal power and authority of a court to render a personal judgment against a party to an action or proceeding. This jurisdiction must be based upon:
“(1) The service of process on the defendant, or on his agent for the service of process;
*1026 “(2) The service of process on the attorney at law appointed by the court to defend an action or proceeding brought against an absent or incompetent defendant who is domiciled in this state; or
“(B) The submission of the party to the exercise of jurisdiction over him personally by the court, or his express or implied waiver of objections thereto. ” (Emphasis added.)
. A party may make an implied waiver of objections to jurisdiction by making a general appearance which subjects him to the jurisdiction of the court. LSA-C.C.P. art. 7.
Thus a judgment obtained against an incompetent person not represented as required by law or against a defendant who has neither been served with process as required by law nor entered a general appearance is null because the court has no personal jurisdiction over that party.
In the case before us, Lorenzo Scott II was not a named “defendant” because his name was fraudulently included as a petitioner in the petition filed on February 9, 1978. Nonetheless, the judgment was rendered “against” Scott in the sense that it adversely affected both his substantive legal rights, depriving him of property rights, as well as his right to due process of the law. The court, however, had no personal jurisdiction over Scott II because he neither submitted to the jurisdiction of the court nor did he make any express or implied waiver of any objections to jurisdiction.
A judgment rendered without personal jurisdiction of the court to adjudicate the parties’ rights is an absolute nullity because it deprives the party over whom personal jurisdiction has not been obtained of due process of the law, specifically of his constitutional rights to notice and an opportunity to be heard. See Stewart v. Stewart, 233 So.2d 305 (La.App. 1 Cir.1970).
We conclude, therefore, that a person whose name is listed without authorization as a plaintiff in a petition but who neither submits himself to the jurisdiction of the court nor receives proper service of process notifying him of the petition is a “defendant” within the meaning of C.C.P. art. 2002(2). Thus, an action to annul a judgment on that ground may be brought at any time.
For the foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED.

. In his brief to this court, Scott correctly points out that the 1978 judgment, regardless of its title, was not a judgment of possession. It was instead a declaratory judgment because it removed the subject property from the succession proceeding and declared Fazande to be the owner.